BOWLING v. STATE.

4924                                    318 S. W. 2d 808

Opinion delivered December 22, 1958.

*Bryan J. McCallen, Claude F. Cooper* and *Gene Bradley,* for appellant.

*Bruce Bennett, Atty. General* and *Bill J. Davis, Asst. Atty. General,* for appellee.

SAM ROBINSON, Associate Justice. The appellant was convicted in Clay County, Arkansas, on the charge of possessing stolen property exceeding in value the sum of $35.00. The information charged, also, that he had previously been convicted of a felony in Oklahoma and had been convicted of a felony in the District Court of the United States for the Eastern District of Illinois. The jury was unable to agree on the punishment, and the court fixed the penalty by sentencing the defendant to ten years in the penitentiary.

On appeal appellant urges several points for reversal, one of which is that the evidence is not sufficient to sustain the conviction. There is no contention that the defendant did not have in his possession mer-

chandise which had been stolen, consisting of several guns, but appellant does maintain that there is no substantial evidence from which an inference can be drawn that he knew the guns had been stolen. In view of the fact that the judgment must be reversed on other grounds, there is no need to abstract the evidence here. Suffice it to say that in our opinion there is substantial evidence to sustain the verdict.

Appellant contends that the State was permitted to impeach its own witness,. Charles Skaggs. The court permitted the prosecuting attorney to cross-examine this witness, on the theory that the prosecution was surprised by his testimony. Apparently the cross-examination included the reading from documents by the prosecuting attorney in the presence of the jury. The question is whether the cross-examination went so far that it can be said to amount to impeachment, but it is not necessary to dwell on this point, because in a new trial there will be absent the element of surprise giving the State's attorney the right to cross-examine a State's witness.

The jury was unable to agree on the punishment. Therefore, on the authority of Ark. Stat. § 43-2306, the court assessed the punishment by sentencing the defendant to ten years in the penitentiary. Appellant contends that the statute authorizing the court to fix the punishment is contrary to several provisions of the Constitution. But we do not reach the constitutional question. The rule is well established that the Constitution is not construed unless the cause cannot be disposed of on any other ground. *Bailey* v. *State,* 229 Ark. 74, 313 S. W. 2d 388.

On cross-examination, over the objection and exception of defendant's counsel, the defendant was asked if he had been charged with other crimes. This was error. In *Reddell* v. *State,* 216 Ark. 197, 224 S. W. 2d 812, we said: ''It is well settled in Arkansas that the defendant as a witness may not be questioned about mere previous arrests, indictments, or charges filed against

him. The mere fact that a charge has been made, as distinguished from the doing of a criminal act or a conviction therefor, tends to prove nothing as to the credibility of the witness. *Johnson* v. *State,* 161 Ark. 111, 255 S. W. 571; *Wray* v. *State,* 167 Ark. 54, 266 S. W. 939; *Jutson and Winters* v. *State,* 213 Ark. 193, 209 S. W. 2d 681. And see 3 Wigmore, Evidence (3d Ed., 1940) § 980a.''

After his arrest on November 24, 1956, the defendant's case was set for trial the following January. The case was continued to April 22nd. At that time the defendant failed to appear, and his bond was forfeited. In explaining his absence, on April 22nd, he stated that he was in jail at Kennett, Missouri, from February 1st to July 16th. The fact that the bond had been forfeited was wholly immaterial, as was the reason for the defendant's absence. Neither sheds any light on the issue of the guilt or innocence of the accused, and we do not think the defendant's effort to explain his absence by stating he was in jail in Missouri opened the door for the prolonged cross-examination of the defendant about other charges. The first fifteen pages of the record given to cross-examination are devoted almost exclusively to questioning the defendant about other offenses and other charges. Of course, we have held that a witness (and this includes the defendant who takes the stand in his own behalf) can be asked on cross-examination about acts embracing moral turpitude, for the purpose of shedding light on his credibility. But the rule is universal that a witness cannot be asked if he has been indicted or charged with an offense. ''Nor should the court permit a question whether the witness has ever been arrested, incarcerated or imprisoned, accused, charged with, informed against, tried without being convicted, or indicted, or prosecuted for crime.'' Underhill's Criminal Evidence, 5th Ed., Vol. 1, § 244.

It would unduly extend this opinion to set out the fifteen record pages of cross-examination above mentioned, but a liberal portion of it is as follows:

"Q. Doc, how old are you? A. 38 years old.

Q. Where were you born? A. Clinton, Arkansas.

Q. Where is Clinton? A. Van Buren County.

Q. When did you move to Missouri? A. In 1941 when I came to Missouri.

Q. You moved to Missouri in 1941? A. Yes sir.

Q. Were you ever arrested or convicted of anything in Arkansas before you moved to Missouri? A. No, sir.

Q. You had never been charged over there with anything? A. No, sir.

Q. Are you sure of that? Public drunkenness or anything else? A. No, sir.

Q. You moved from Clinton right to Missouri? A. No, sir, moved from Clinton to Henrietta, Oklahoma.

Q. Is that where you stole the cattle? A. Where I, was supposed to have stolen cattle.

(Previously the State had proved the conviction for stealing domestic animals.)

Q. You weren't guilty of that either? A. No, sir.

Q. But you were tried by a jury? A. Yes, sir.

Q. And found guilty by the jury? A. Yes, sir.

Q. You started serving time when? A. I believe the spring of '40.

Q. When did you get out, February '41? A. I believe that's right.

Q. When did you go in service? A. January 5, 1942.

Q. You were in service about three years? You got out what month in '45? A. I got out October 12th.

Q. October 12, 1945. How many days was it before you stole the car? A. I couldn't be exact.

(In its case in chief, the State had proved this offense.)

Q. How many days did you have the car before you were arrested? A. I think maybe over night, something like that.

Q. If you were arrested 11/17/45, then you stole it on the 16th, didn't you? Did you steal the car or did they have you charged with it? A. I drove my car and left the— went in a saloon, and got in another car and drove it off. I stopped at Centralia, Illinois at a beer joint.

Q. You didn't have a bill of sale on that car? A. I didn't have nothing.

Q. You pleaded guilty there, too? A. No.

Q. Did you plead guilty? A. I did.

Q. What was your lawyer's name? A. Mr. Hans W. Wulff of St. Louis and I believe Mr. George K. Reeves from Caruthersville.

Q. You plead guilty there in stealing a car? A. Yes, sir.

Q. But you plead not guilty of larceny of domestic animals, cattle theft? A. Yes, sir.

. . .

Q. You were out of the Army less than a month when you got in trouble stealing a car? A. I would say around that length of time.

Q. When did you get out of the Federal Penitentiary? A. I don't remember.

Q. Was it December 29, 1946? A. I believe it was along about that time, yes, sir.

. . .

Q. Where did you serve the Federal time? A. Leavenworth.

Q. On January 6, 1954, were you picked up by the State Highway Patrol at Poplar Bluff? A. What day?

Q. January 6, 1954.

MR. COOPER: That is objected to.

Q. In January—

MR. COOPER: He can ask if he was convicted.

MR. SHELL: You asked about charges, Mr. Cooper.

MR. COOPER: No matter about that. All he can ask (is) if he has been convicted or if he did a certain thing.

COURT: Mr. Cooper, did you ask this witness on direct examination about charges he had been placed in jail on?

MR. COOPER: No, sir, I certainly did not. If I did, I was asleep.

MR. SHELL: I would remind the court about all the charges in Missouri having been dismissed and that have not been dismissed. I submit that opened it up.

COURT: Did you ask him about the charges he had been placed under?

MR. COOPER: I asked why he didn't come to Arkansas on charges —

COURT: I am asking you this question, Mr. Cooper, did you ask about charges he had been placed in jail on?

MR. COOPER: Yes, sir, in Caruthersville.

COURT: Then this is proper cross examination.

MR. BRADLEY: Just a minute.

(Conference at the bench.)

MR. BRADLEY: The court then is overruling Mr. Cooper's objection?

COURT: Sustaining the objection to that question there. The court is permitting the prosecuting attorney to examine on any charges since December 1956 for the reason that the direct examination of the defense counsel made it competent.

MR. BRADLEY: Of course the defendant is objecting to the court's ruling. Exception.

MR. COOPER: If the court please, my objection was to the whole business.

COURT: I sustained the objection to 1954, but by your direct examination of defendant on charges since December 1956, the court is holding this is competent for the prosecuting attorney to examine him on arrests and charges since December 1956.

MR. BRADLEY: Same objection.

COURT: All right.

MR. BRADLEY: Same exception.

Q. In May 1954, in or about Poplar Bluff, did you break into any place and steal something?

A. No, sir.

Q. You didn't? Specifically the date is May 6, 1954.

MR. COOPER: I object to that.

COURT: Overruled.

MR. COOPER: Exception.

A. No, sir.

Q. On or about April 9th, or on or about April 7, 1955, in or around Caruthersville, Missouri, did you steal anything? A. No, sir.

. . .

Q. What happened to you between January and April? A. I was put in jail at Kennett.

Q. On charges over there for receiving stolen property, property alleged to have been stolen from places in Missouri? A. No, sir, not at Kennett.

MR. COOPER: We object to that.

COURT: Overruled.

MR. COOPER: Exception.

Q. Why were you put in jail? A. The warrant you fellows sent over there.

Q. Is that why you were put in jail over there first? A. At Kennett, yes.

Q. After you made bond in November or December, you came back to court in January, didn't you? A. Yes, sir.

Q. You left here? A. Yes, sir.

Q. Freely and voluntarily? A. Yes, sir.

Q. Went back to Missouri? A. Yes, sir.

Q. You were in jail in April at the time the bond was forfeited, were you not? A. Yes, sir.

Q. What were you in jail for then? A. I don't remember the charge right now.

Q. You are telling the jury you were in jail and you don't even remember the charge? A. I don't.

Q. As the truth of the matter, you know what the charge is, receiving stolen property alleged to have been stolen from places in Missouri, wasn't it? A. No.

MR. COOPER: I object to the manner of examination of this witness. If Mr. Shell wants to know, he can get the *alias* warrant issued and the information from over there.

COURT: Mr. Cooper, the examination is proper and the statement you made is improper.

MR. SHELL: The alias warrant was issued after the bond was forfeited.

Q. Where were you in jail on—

MR. BRADLEY: I would like a ruling on Mr. Cooper's objection.

COURT: Overruled.

MR. COOPER: I am objecting to statement of the prosecuting attorney testifying what was done because the record speaks for itself.

COURT: Do you want the court to state what the record shows?

MR. SHELL: Yes, sir, at this time I would like the court to state.

MR. COOPER: Yes, sir, I would like to see the record.

COURT: April 22, 1957, defendant called three times, failed to answer. Not present, forfeiture on bond, *alias* warrant for defendant.

MR. SHELL: That is on the—

COURT: April 22, 1957.

Q. Where were you on April 22, 1957? A. In jail at Kennett.

Q. What kind of charge? A. I don't remember what the charge was.

Q. And at that time there were also charges against you in Pemiscot County and another county, three different counties, wasn't there? A. No sir, there was two counties.

MR. COOPER: I ask that the witness be given time to answer the questions.

COURT: He can't answer with you interrupting. The witness was trying to answer with you talking. Go ahead and answer.

A. Two counties in Missouri had warrants for me.

Q. You are telling this jury you can't remember the charge? A. No, not Kennett.

Q. What in the other counties? A. Pemiscot, burglary and larceny.

Q. What other charges? A. That's all.

Q. Did you have a charge of receiving stolen property or buying stolen property? A. No, sir.

Q. You don't know what the charge was in Kennett? A. No, I don't remember what it was. I had it read to me.

Q. Do you remember if it was murder? A. No, it was not murder.

Q. Do you remember whether it was rape? A. No, it wasn't that.

Q. Do you remember whether it was stealing an automobile? A. I don't remember what the charge was.

Q. You were in jail but you don't remember what the charge was? A. That's right."

The rule is that a witness cannot be asked if he has been charged with a crime. There was nothing in the direct examination of the defendant that justified the prosecution in pursuing the subject of the defendant's incarceration in the Kennett, Missouri, jail. He was asked on cross-examination: "Q. What happened to you between January and April? A. I was put in jail at Kennett. Q. On charges over there for receiving stolen property, property alleged to have been stolen from places in Missouri? A. No, sir, not at Kennett." and "Q. As the truth of the matter, you know what the charge is, receiving stolen property alleged to have been stolen from places in Missouri, wasn't it?" and "Q. Where were you on April 22, 1957? A. In jail at Kennett. Q. What kind of charge? A. I don't remember what the charge was. Q. And at that time there were also charges against you in Pemiscot County and another county, three different counties, wasn't there?" Questions concerning other charges against the defendant were repeated again and again by the prosecution. The effect of these questions was to impress upon the

jury that the defendant had been charged in Missouri with offenses similar to the one for which he was then being tried. Evidence of other crimes (not charges) is admitted solely for the purpose of shedding light on the credibility of the witness, but such evidence is not admissible for the purpose of showing that the defendant is a person likely to commit the offense charged. *Alford* v. *State,* 223 Ark. 330, 266 S. W. 2d 804; *Moore* v. *State,* 227 Ark. 544, 299 S. W. 2d 838.

Next, the appellant contends that the federal offense of transporting a stolen automobile in interstate commerce will not support the charge of having been convicted of a prior offense under our statute. Act 228 of 1953 (Ark. Stat. §§ 43-2328-43-2330) is known as the "Habitual Criminal Act". The first section (Ark. Stat. § 43-2328) deals with the punishment when the prior offense was committed in this State. Section 2 (Ark. Stat. § 43-2329) applies where the prior conviction was not in the courts of Arkansas. Section 2 provides:

"SECTION 2. Effect of conviction in another State. Any person convicted in any of the United States, or in any district or territory thereof, or in any Federal Court, or in a foreign country, of an offense which, *if committed in this State, would be punishable by the laws of this State by imprisonment in the penitentiary,* shall, upon conviction for any subsequent offense punishable by imprisonment, within this State, be subject to the punishment prescribed in Section 1 upon subsequent convictions, in the same manner and to the same extent as if such first conviction had taken place in a court in this State." (Emphasis ours)

Obviously before Section 2 would apply the offense committed elsewhere would have to be punishable by the laws of this State if committed here. The evidence introduced by the State to prove the charge of having been convicted of a felony in a district court of the United States showed that the defendant had pleaded guilty to the violation of the Dyer Act on two counts. Appellant cites *Landreth* v. *Gladden,* 253 Or. 205, 324

P. 2d 475, as authority for the proposition that a prior conviction of transporting a stolen automobile in interstate commerce cannot be used as the basis for a charge of a prior conviction under a statute substantially the same as our Habitual Criminal Statute. But in the case at bar, not only did the defendant plead guilty to violating that section of the Dyer Act (18 U. S. C. A. § 2312) dealing with transporting a stolen vehicle in interstate commerce, but pleaded guilty, also, to violating § 2313, which provides: "§ 2313. Sale or receipt of stolen vehicles. Whoever receives, conceals, stores, barters, sells or disposes of any motor vehicle or aircraft, moving, as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

The distinction between § 2312 and § 2313 is pointed out in the *Landreth* case, and there the conviction in the federal case was under § 2312, which applies to transporting a stolen automobile in interstate commerce. Section 2313 makes it unlawful to "receive" a stolen automobile moving in interstate commerce, and such an act would also be a violation of the laws of this State. The fact that the vehicle was or was not moving in interstate commerce would be immaterial. *People* v. *Morgan,* 270 App. Div. 859, 60 N. Y. S. 2d 774.

For the error in permitting the State to cross-examine the defendant in regard to other charges, the judgment is reversed and the cause remanded for new trial.