**Alfred HENDERSON et al.**

v.

**TRAILWAY BUS COMPANY et al.**

**Mrs. Minnie ROBINSON et al.**

v.

**George HUNTER et al.**
**Civ. Nos. 3148, 3163.**

United States District Court
E. D. Virginia,
at Richmond.

Argued Jan. 6, 1961.

Decided March 24, 1961.

Joseph A. Jordan, Jr., E. Armistead Dawley, Jr., Leonard W. Holt, and Henry H. Jones, Norfolk, Va., for plaintiffs.

A. S. Harrison, Jr., Atty. Gen. of Virginia, C. Hardaway Marks, Torsten E. Peterson, City Atty., Hopewell, Va., and William Earle White, Petersburg, Va., for defendants.

Rowland Watts and Melvin L. Wulf, New York City, for American Civil Liberties Union, amicus curiae.

Before BOREMAN, Circuit Judge, and LEWIS and BRYAN, District Judges.

ALBERT V. BRYAN, District Judge.

"Sit-in" is the common designation of the conduct for which each of the plaintiffs here has been prosecuted, or threatened with prosecution, under the criminal trespass statutes of Virginia. It consists of the passive and peaceable refusal of a Negro, or a white person acting in sympathy with him, to leave a restaurant, where on account of his race or color, the Negro has been denied service of food or beverages at the same counter or other space at which white persons are served. These statutes were intended, and are now invoked, to maintain illegal segregation of persons of the Negro from those of the white race, say the plaintiffs in these two companion suits asking for the restraint of the enforcement of the statutes and a declaration of their invalidity. 1950 Va.Code 18.1–173 and 173.1 post. Specifically, it is argued, they deprive the colored people of privileges and immunities secured to them by the equal protection clause of the Federal Constitution's Fourteenth Amendment and by the Civil Rights Acts. 42 U.S.C.A. §§ 1981, 1983.

The assailed statutes read, so far as pertinent and amended to 1960, as follows:

"§ 18.1–173. Trespass after having been forbidden to do so.—If any person shall without authority of law go upon or remain upon the lands, buildings or premises of another, or any part, portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian or other person lawfully in charge thereof, or after having been forbidden to do so by a sign or signs posted on such lands, buildings, premises or part, portion or area thereof at a place or places where it or they may be reasonably seen, he shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than one thousand dollars or by confinement in jail not exceeding twelve months, or by both such fine and imprisonment."

"§ 18.1–173.1. Instigating, etc., such trespass by others; preventing service to persons not forbidden to trespass.—If any person shall solicit, urge, encourage, exhort, instigate or procure another or others to go upon or remain upon the lands, buildings, or premises of another, or any part, portion or area thereof, knowing such other person or persons to have been forbidden, either orally or in writing, to do so by the owner, lessee, custodian or other person lawfully in charge thereof, or knowing such other person or persons to have been forbidden to do so by a sign or signs posted on such lands, buildings, premises or part, portion or area thereof at a place or places where it or they may reasonably be seen; or if any person shall, on such lands, buildings, premises or part, portion or area thereof prevent or seek to prevent the owner, lessee, custodian, person in charge or any of his employees from rendering service to any person or persons not

so forbidden, he shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than one thousand dollars or by confinement in jail not exceeding twelve months, or by both such fine and imprisonment."

As the design and meaning of these statutes have been painstakingly expounded by the Supreme Court of Appeals of Virginia, we proceed without stay for further State court interpretation. Hall v. Commonwealth, 1948, 188 Va. 72, 49 S.E.2d 369, appeal dismissed 335 U.S. 875, 69 S.Ct. 240, 93 L.Ed. 418, rehearing denied 335 U.S. 912, 69 S.Ct. 480, 93 L.Ed. 445; cf. Harrison v. N.A.A.C.P., 1959, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152.

In No. 3148 the incident of the complaint arose in Petersburg, Virginia in the bus depot of the Trailway Bus Company. It occurred in the lunchroom operated there by the Bus Terminal Restaurant of Virginia, Inc. The plaintiffs asked to be served at the cafeteria which was assigned exclusively for white patrons. When they were declined service, they refused to move from that area and thereupon they were arrested as violators of § 18.1–173, supra, now to be called the trespass statute.

Discontinuance of the present action as to the Trailway Bus Company, its manager and the Bus Terminal Restaurant of Virginia, Inc., having been asked by the plaintiffs and granted, the only defendants remaining are the City of Petersburg, its City Manager and the Governor of Virginia. Racial segregation has now been entirely abandoned by Trailway and Bus Terminal. Further pursuance of the suit rests on the allegation of fear of a resumption of the practice.

The grievances of the complaints in No. 3163 arose in the City of Hopewell, Virginia, at George's Rexall Drug Stores. The behavior charged as a breach of the trespass statute is of the same pattern as the events of No. 3148. Certain Negroes and whites of Lynchburg, Virginia,

have been allowed to intervene in the case to protest similar experiences there with these statutes. The defendants are the Drug Stores, the City of Hopewell, its Mayor and the Governor of Virginia.

I. Although conceding that the trespass statute was passed by the General Assembly of Virginia in 1934, long before the "sit-in" was known, the plaintiffs point to the amendments and additions of 1958 and 1960 as giving the law an unconstitutional cast. Now to be called the instigating statute, section 18.-1–173.1 first appeared in 1960. The trespass statute was amended in 1958 in respect to the penalty: the fine raised to $100 and possible confinement in jail not exceeding thirty days added. In 1960 the trespassing statute was again amended to define the premises covered as including buildings and portions thereof, and to enlarge the maximum punishment to a fine of $1,000 or confinement in jail not exceeding twelve months. Both of the 1960 enactments became effective before the episodes related in the complaints. But with these exceptions and a 1956 amendment providing for the posting of notices, the trespass statute has remained substantially unchanged since 1934.

■ The increased punishments and the instigating statute may fairly be said to have been enacted with an eye to the "sit-in". The Legislature's motive alone, however, could not invalidate the statute. Besides, the criminal elements of the present statutes are no more expansive than were those of the 1934 trespass statute.

■■ But, in any event, the critical factor is that the statutes apply only to places where a person goes "without authority of law", meaning property not at the time affected with a public interest. Racial segregation on property in private demesne has never in law been condemnable. Indeed, the occupant may lawfully forbid any and all persons, regardless of his reason or their race or religion, to enter or remain upon any part of his premises which are not devoted to a public use. Williams v. Howard Johnson's Restaurant, 4 Cir., 1959, 268 F.2d 845; Slack v. Atlantic White Tower System, 4 Cir., 1960, 284 F.2d 746. Assurance of this right is the entire and sole aim of the two code provisions before us. Hall v. Commonwealth, supra, 188 Va. 72, 49 S.E.2d 369, 371. In there sustaining the statute, the Virginia Court relied in part upon Martin v. City of Struthers, 319 U.S. 141, 147, 63 S.Ct. 862, 865, 87 L.Ed. 1313, where Justice Black said:

"Traditionally the American law punishes persons who enter onto the property of another after having been warned by the owner to keep off. General trespass after warning statutes exist in at least twenty states, while similar statutes of narrower scope are on the books of at least twelve states more. * * *"

■ The determinative question here, then, is whether the property in either of these cases was dedicated, even though temporarily, to anything other than a private use. Clearly, the Petersburg Depot Restaurant in one aspect was a public facility: it was required to offer service to all interstate passengers of Trailway, no matter their race or color. Boynton v. Commonwealth of Virginia, 1960, 364 U.S. 454, 81 S.Ct. 182, 5 L.Ed. 2d 206. However, as to this location the issue is academic for, as already noted, segregation has been abolished there; and no threat of its resumption is apparent. But the drug store in Hopewell was and is still in private use. Williams v. Howard Johnson's Restaurant, 4 Cir., 268 F.2d 845, supra; Slack v. Atlantic White Tower System, 4 Cir., 284 F.2d 746, supra. It follows that the statutes are not vulnerable to the charge of illegality.

II. After accrediting all of the plaintiffs' testimony with its face value, still no proof appears of discrimination against Negroes in the invocation of the statutes. There are no instances adduced of differentiation between the races in the execution of these laws. Indeed, the

evidence reveals that both whites and Negroes were arrested for the transgressions, as well as persons identified as "Moorish Americans", who are described as being neither white nor Negro. It is noteworthy that Hall v. Commonwealth, supra, upheld the legislation in the conviction of members of a religious sect not known by race or color.

■ III. But if we have erred in not finding infirmity in these statutes or inequality in their enforcement, nevertheless the plaintiffs have not shown an entitlement to an injunction. In the first place, a plain and adequate remedy at law is available to them, and this readiness, of course, completely refutes their appeal to equity jurisdiction. Redress at law is provided in their opportunity to defend the criminal prosecutions, indeed to stand mute until a case is made against them beyond a reasonable doubt under these very statutes, with no burden whatsoever upon them as defendants there. Nothing here indicates that a full and fair presentation, hearing and consideration of their views upon the validity of the two statutes cannot be had before the State courts in these prosecutions. Spence v. Cole, 4 Cir., 1943, 137 F.2d 71, 72. There is also the ultimate right of review in the Federal Supreme Court, as illustrated by Murdock v. Commonwealth of Pennsylvania, 1943, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292. Irreparable injury to the plaintiffs through submission of their contentions in this manner to the State tribunals is not demonstrated. This circumstance obviously undermines all foundation for the injunction claimed.

■ Strengthening this conclusion is the time-honored, judicious precept that a Federal court should never interpose its decree between a State and a criminally accused save in unusual circumstances—and none is here. Spence v. Cole, 4 Cir., 137 F.2d 71, 73, supra. So recently as February 27, 1961 the Supreme Court reaffirmed this rule. Aptly speaking to this point for the Court, in Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632,

635, 5 L.Ed.2d 620, Justice Whittaker summarized the doctrine in this language:

"* * * If, at the criminal trial, the Illinois court adheres to its interlocutory order on the suppression issue to petitioner's prejudice, he has an appeal to the Supreme Court of that State, and a right if need be to petition for 'review by this Court of any federal questions involved.' Douglas v. City of Jeannette, 319 U.S. 157, 163 [63 S.Ct. 877, 881, 87 L.Ed. 1324]. It is therefore clear that petitioner has a plain and adequate remedy at law in the criminal case pending against him in the Illinois court.

"There is still another cardinal reason why it was proper for the District Court to dismiss the complaint. We live in the jurisdiction of two sovereignties. Each has its own system of courts to interpret and enforce its laws, although in common territory. These courts could not perform their respective functions without embarrassing conflicts unless rules were adopted to avoid them. Such rules have been adopted. One of them is that an accused 'should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial.' Ponzi v. Fessenden, 258 U.S. 254, 259 [42 S.Ct. 309, 310, 66 L.Ed. 607]. Another is that federal courts should not exercise their discretionary power 'to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is both clear and imminent; * * *' Douglas v. City of Jeannette, supra, [319 U.S.] at 163 [63 S.Ct. at page 881]."

■ The declaratory judgment prayed by the plaintiffs must also be de-

nied. That procedure we deem inappropriate in the circumstances because the issue of criminal responsibility should be left to the State court. Spence v. Cole, 4 Cir., 137 F.2d 71, 73, supra.

As the complaints tender no ground for injunctive or declaratory adjudication, they must be dismissed. The judgments will go for the defendants upon their motions to dismiss treated as motions for summary judgment.