596

BRIGGS *v.* STATE.

4992, 4994, 4997                367 S. W. 2d 750

Opinion delivered May 13, 1963.

[Rehearing in Case No. 4997 denied June 3, 1963.]

*Harold B. Anderson* and *Wiley A. Branton*, for appellant.

*Bruce Bennett*, Atty. General, by *Clyde Calliotte*, Asst. Atty. Gen., for appellee.

JIM JOHNSON, Associate Justice. These are the so-called "sit-in" cases. They were submitted to this court on January 16, 1961. At that time there were cases claimed to be similar pending in other states.[1] By common consent our decision was delayed awaiting the outcome of cases then pending in which petitions for *certiorari* to the United States Supreme Court had been filed. Since then additional petitions have been filed and there are now pending before the United States Supreme Court at least three cases of this nature in which *certiorari* has been granted. See *Avent* v. *North Carolina*, cert. 370 U. S. 934; *Peterson* v. *City of Greenville*, cert. 370 U. S. 935; *Lombard* v. *Louisiana*, cert. gr. 370 U. S. 935. We were particularly interested in the outcome of the "Garner cases", *Garner* v. *Louisiana*, 368 U. S. 157, 82 Sup. Ct. 248, 7 L. Ed. 2d 207, which appeared to be in point with the cases at bar. From the opinion of the United States Supreme Court in these cases, which were decided December 11, 1961, it developed that the cases did not involve a situation similar to ours and therefore afforded no persuasive authority.

While we originally intended to delay our decision until the United States Supreme Court had decided a case in point with ours, it is against our policy to delay for too long our decision in any pending case. We ascribe to the theory that justice delayed is justice denied. For many years when this court goes into summer adjourn-

---

[1] *Henderson* v. *Trailway Bus Co.*, (Va.) 194 F. Supp. 423; *Randolph* v. *Commonwealth*, (Va.) 119 S. E. 2d 817; *State* v. *Williams* (N. C.), 117 S. E. 2d 824; *Samuels* v. *State* (Ga.), 118 S. E. 2d 231; *Briscoe* v. *State*, (Tex.) 341 S. W. 2d 432; *Walker* v. *State* (Ga.), 118 S. E. 2d 284; *State* v. *Fox* (N. C.), 118 S. E. 2d 58; *Rucker* v. *State* (Tex.), 342 S. W. 2d 325; *Burton* v. *Wilmington* (Del.) *Parking Authority*, 365 U. S. 715; *Williams* v. *Hot Shoppes, Inc.*, C. A. D. C., April 20, 1961, No. 15610; *Gober* v. *City of Birmingham* (Ala.) 133 So. 2d 697.

ment all cases ready for submission have been decided except some rare cases, like these, which are carried over for a definite reason. These cases have now been pending for over two years. We do not feel that we can properly delay them longer to await a decision of the United States Supreme Court. In order to avoid carrying these cases over another summer we now proceed to a decision.

Our cases here were consolidated.[2] They consisted of three criminal prosecutions against 13 defendants. The prosecutions arise out of the activities of the defendants in seeking to be served at eating facilities maintained for whites, the defendants being Negroes. The three cases involve separate incidents at separate retail establishments. There are factual and legal differences necessitating a different disposition of the cases of one group of appellants as compared to the other two groups.

Case No. 4992, styled *Briggs et al* v. *State,* is a prosecution under Act 226 of the Acts of 1959. It involves a "sit-in" at F. W. Woolworth Company in Little Rock on March 10, 1960.

Case No. 4994, styled *Smith et al* v. *State,* is also a prosecution under Act 226 of the Acts of 1959. It involves a "sit-in" at Pfeifers Department Store in Little Rock on April 13, 1960.

Case No. 4997, styled *Lupper et al* v. *State,* is a prosecution under Act 226 and also under Act 14. It involves a "sit-in" at the Gus Blass Store in Little Rock on April 13, 1960.

In the *Briggs* case, the evidence shows that the Negro defendants seated themselves at a lunch counter in Woolworth's and refused to leave when ordered to do so by police officers. The evidence is undisputed that these defendants were not requested to leave by the management or by anyone with authority to act for the management.

In the *Smith* case, the record shows that all defendants but one left the premises promptly upon the request of the manager.

---

[2] The cases were consolidated for briefing upon motion of appellants.

The *Lupper* case was tried to a jury and there is adequate evidence on behalf of the State to support a finding that these two defendants, James Frank Lupper and Thomas B. Robinson, refused to leave the Gus Blass Store at the request of the manager.

## ACT 226 CASES

We see no distinction in fact or law between the three prosecutions under Act 226 of 1959. Therefore, we will discuss the three cases together insofar as Act 226 is concerned. Of course, it will be necessary to discuss the prosecution under Act 14 separately.

For reversal of the Act 226 cases, it is insisted that:

(1) The Act is unconstitutional because it denied defendants due process and equal protection of the law.

(2) The Act has been applied in an unconstitutional manner.

(3) The evidence was insufficient to support a conviction; and,

(4) The judgment was excessive and harsh.

Since we are of the opinion that Point 3 is well taken,[3] we will not pass upon the constitutionality of Act 226 of 1959. This is in accordance with the established rule of this court that constitutional questions will not be decided where the case may be disposed of on other grounds. *Bailey* v. *State,* 229 Ark. 74, 313 S. W. 2d 388; *Bowling* v. *State,* 229 Ark. 876, 318 S. W. 2d 808.

Section 1 of Act 226 of 1959 [§ 41-1432 Ark. Stats.] reads as follows:

''Any person who shall enter any public place of business of any kind whatsoever, or upon the premises of such public place of business, or any other public place whatsoever, in the State of Arkansas, and while therein or thereon shall create a disturbance, or a breach of the peace,

---

[3] It is noted that these appellants were charged and convicted of a violation of Act 226 of 1959 exclusively and not for a violation of the prohibitions contained in Ark. Stats. § 41-1401 or § 41-1403, the general disturbance of the peace statutes.

in any way whatsoever, including, but not restricted to, loud and offensive talk, the making of threats or attempting to intimidate or any other conduct which causes a disturbance or breach of the peace or threatened breach of the peace, shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not more than five hundred dollars ($500.00) or imprisoned in jail not more than six (6) months, or both such fine and imprisonment."

Under this Act the prohibited offenses are creating disturbances or breaches of the peace. The Act sets forth loud and offensive talk, the making of threats and attempts to intimidate as examples of prohibited conduct. While there was some evidence on the part of the State to the effect that feeling and tension were high, the State offered no substantial evidence that these defendants entered the store to carry out a conspiracy to cause a breach of the peace, nor was there evidence that these defendants or any of them uttered any loud offensive talk, made any threats or attempted to intimidate anyone. The defendants had a right to peacefully seek service at the lunch counters. By the same rule, management had a right to refuse to serve them. Since the peaceful efforts of the defendants to get service at the lunch counters were lawful, and in the absence of a substantial showing that such efforts were organized and calculated to disturb or breach the peace, it cannot be said here that the mere making of these efforts amounted to "creating a disturbance or breach of the peace." It is obvious that the Act contemplates a doing of that which the actor has no legal right to do. The defendants in the *Briggs* case refused to leave at the command of the police officers but in the absence of a request by management of the officers to order appellants to leave the premises, the officers had no right or authority to give such orders. There is no contention in this case that the officers had received such a request from management. Hence, the refusal of the defendants to leave was not unlawful and could not have been unlawful until they refused to leave at the request of the management or the officers in compliance with a request from management. In the *Smith* case all defendants but one left promptly at the request of the management. Certainly

those leaving were guilty of no offense. The case of the one individual (in the *Smith* case) who did not leave promptly gives us more concern. However, we are constrained to believe that any unrest, tension or disturbance existent in the Pfeifer store at that time had already been created by the lawful efforts of all the defendants to obtain service. There is no showing that this act of the defendant created a disturbance or breach of the peace. A different question would be presented had this defendant been prosecuted under Act 14 of 1959 but no such charge was placed against him.

The point which we wish to make completely clear is that the mere fact that the exercise of a lawful right may result in a disturbance or breach of the peace does not make the exercise of that right a violation of the law so long as the right is exercised in a peaceful manner and without force or violence or threats of same. Therefore, we conclude that all defendants in all prosecutions under Act 226 of 1959 should have been acquitted.

In the *Lupper* case, which involves violations of Act 14 of 1959, as well as violations of Act 226, the appellants make the same contentions as to Act 14 as are made as to Act 226 and an additional point is raised as to alleged error in refusing to give certain instructions.

## DUE PROCESS AND EQUAL PROTECTION OF LAWS

Section 1 of Act 14 of 1959 [§ 41-1433 Ark. Stats.] reads as follows:

"Any person who after having entered the business premises of any other person, firm or corporation, other than a common carrier, and who shall refuse to depart therefrom upon request of the owner or manager of such business establishment shall be deemed guilty of a misdemeanor and upon conviction shall be fined not less than fifty dollars ($50.00) nor more than five hundred dollars ($500.00) or by imprisonment not to exceed thirty (30) days, or both such fine and imprisonment."

Appellants assert that Act 14 is unconstitutional in that it denies them equal protection of the laws and due process as guaranteed by the Fourteenth Amendment to the Constitution of the United States and Section 8 of Article II of the Constitution of Arkansas, and cite *United States* v. *Miller,* D. C., 17 F. Supp. 65 ; and *Lanzetta* v. *New Jersey,* 306 U. S. 451, 59 Sup. Ct. 618, 83 L. Ed. 888. It is contended that the Act is so vague as to make it impossible to determine what conduct might transgress the statute. It is said that the Act provides no ascertainable standard of criminality. With these contentions we cannot agree. The Act clearly, specifically and definitely makes the failure to leave the business premises of another upon request of the owner or manager a misdemeanor.

It is suggested that the Act could be construed so as to allow an owner or manager to invoke the same because a customer was demanding a refund of money paid for merchandise or because a customer was demanding a delivery of merchandise which he had purchased. Assuming this to be true, we see no reason why the Act amounts to a denial of due process or equal protection of the laws. To remain upon the premises of another after having been requested to leave amounts to a trespass. *State* v. *Clyburn,* 247 N. C. 455, 101 S. E. 2d 295. This does not mean that under the hypothesis suggested by appellants that the aggrieved customer would have no remedy because if management had failed to return his money or deliver merchandise purchased, an action would lie in the courts of this State and the customer could be fully compensated for the failure to return the money or deliver the merchandise. A bill collector has a right to attempt to collect what is due him but he has no right to commit a trespass in the process.

By its terms and on its face, the statute applies to all who refuse to leave and it is not restricted to negroes. There is nothing uncertain, indefinite or vague about Act 14. It prohibits trespass.

While the Legislature and not this court determines public policy by statutory enactments, we feel that it is a wise policy to prevent possible violence and bloodshed by

providing criminal sanctions against trespass. We have held that a citizen of this State may use force and violence short of killing to protect his property against trespass even though the trespasser makes no effort to commit a felony. *Carpenter* v. *State,* 62 Ark. 286, 36 S. W. 900. The statute here in question simply provides a means whereby the owner of property may be protected in his use and possession of such property without having to resort to force and violence. We are impressed with the proposition that without this salutary statute, violence in repelling trespassers could become commonplace. Certainly, it is in the interest of the public and a valid exercise of the police power to protect the public peace by criminal sanction against trespass. Article 2, § 22 of the Constitution of Arkansas in part is as follows:

"The right of property is before and higher than any constitutional sanction . . ."

The right to hold and enjoy property free from interference by others is one of the most precious rights enjoyed by the citizens of this State. They are entitled to be protected in this right against all trespassers without regard to whether they are colored or white.

The appellants complain that the Act does not require any *mens rea* or criminal intent on the part of the offender. We again disagree; the intent to remain after being requested to leave is a criminal intent.

## UNCONSTITUTIONAL APPLICATION OF ACT 14

The appellants contend that Act 14 has been unlawfully and unconstitutionally administered because it is said that the Act would not be invoked or enforced against a white man under the same or similar circumstances, thereby denying appellants equal protection of the laws. There is absolutely no evidence in the record to justify such an assertion. On its face the Act is applicable to all persons without regard to race. Appellants made no effort to adduce evidence to prove that white persons had violated the Act; that these violations were known to the officers and prosecuting authorities and that no arrests and prosecutions had followed such violations. Such proof

would have been necessary in order to justify the present contention. See: *Taylor* v. *City of Pine Bluff,* 226 Ark. 309, 289 S. W. 2d 679, Certiorari denied, 352 U. S. 894, 77 Sup. Ct. 125, 1 L. Ed. 2d 85; also see: *Yick Wo* v. *Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220; *Snowden* v. *Hughes,* 321 U. S. 1, 64 Sup. Ct. 397, 88 L. Ed. 497; *Hickinbotham* v. *State,* 227 Ark. 1032, 303 S. W. 2d 565.

The appellants have not shown, nor have we been able to find from the record, a single discriminatory act on the part of the State in the enforcement of this statute. It is not unusual for persons charged with crime to assert ''discrimination'', however, unsupported assertions cannot be held to take the place of evidence.

## STATE ACTION

Appellants further assert that the Act has been unconstitutionally applied in that the enforcement of such Act amounts to ''state action'' in violation of the 14th Amendment to the Federal Constitution. They cite, *inter alia, Shelley* v. *Kraemer,* 334 U. S. 1, 68 Sup. Ct. 836, 92 L. Ed. 1161; *Hurd* v. *Hodge,* 334 U. S. 24, 68 Sup. Ct. 847, 92 L. Ed. 1187; *Barrows* v. *Jackson,* 346 U. S. 249, 73 Sup. Ct. 1031, 97 L. Ed. 1586; and *Valle* v. *Stengel,* 176 F. 2d 697. This argument is completely untenable because it presupposes a right in the Negro defendants to be served by the lunch counter operators. In all of the cited cases from the Supreme Court of the United States it is either assumed or specifically stated that the Negroes involved had a right to own and occupy the property in question. In the *Valle* case, the State of New Jersey had enacted a statute giving all persons, irrespective of color, the right to admission of places of public accommodation such as the swimming pool there in question.

There is no right in these defendants under either State or Federal law to compel the owners of lunch counters to serve them. Many states have enacted so-called ''public accommodation'' statutes but Arkansas is not among them. The Fourteenth Amendment does not guarantee any such right to the appellants.

Appellants place great reliance on the language in *Valle* v. *Stengel, supra,* with reference to the right to contract. However, a reading of the *Valle* case shows that the court merely held that the Fourteenth Amendment and the Federal Civil Rights Statutes only guaranteed to Negroes "a civil status equivalent to that enjoyed by white persons." As previously mentioned, New Jersey had a "public accommodation" statute guaranteeing to all persons, regardless of color, the right to admission to the swimming pool in question. This is considerably different from the situation in the case at bar. Arkansas has no "public accommodation" statute. Management can arbitrarily order white persons to leave lunch counters for any reason whatever. While appellants expound forcefully of the equal privileges and immunities provisions of the Fourteenth Amendment, we cannot escape the conclusion that they are urging this court to grant them an unequal privilege, that is the right to be served in a restaurant because they are colored, even though a corresponding right does not exist in white persons. Appellants' argument must fail because they, regardless of color, had no right or privilege to be served. To hold otherwise would be to employ judicial fiat to coerce unwilling lunch counter operators to afford service to patrons they do not want and did not seek. It can add nothing to the argument to say that they did not want appellants because of their color because appellants had no basic right to be served and the State's action in enforcing the criminal laws against trespass cannot be held to be "state action" abridging the privileges or immunities of citizens of the United States. There is no privilege or immunity to trespass on private property. It should be remembered that the operators of the lunch counter in question have a right not to be deprived of their property without due process of law. This right is guaranteed to them under the same provisions of the Constitution now sought to be invoked by appellants. To hold that anyone may trespass at will simply because his color is different from that of the property owner and that the law is powerless to protect the injured party would be inviting property owners to provide their own means of evicting trespassers. This

would not be consonant with the principles of a nation which regards good order as one of the fundamental objectives of society. The Supreme Court of the United States has approved a municipal ordinance designed to prevent trespass by providing that it should be unlawful for magazine subscription solicitors to go upon private property for the purpose of soliciting orders without having been requested or invited to do so. *Breard* v. *Alexandria,* 341 U. S. 622, 71 Sup. Ct. 920, 95 L. Ed. 1233. In the *Breard* case the court rejected arguments of the appellant solicitor that the ordinance violated: (a) The due process clause of the Fourteenth Amendment; (b) The Federal Commerce Clause; (c) The guarantees of the First Amendment of freedom of speech and the press (made applicable to the states by the Fourteenth Amendment).

In the *Breard* case the court said:

"Since it is not private individuals but the local and federal governments that are prohibited by the First and Fourteenth Amendments from abridging free speech or press, *Hall* v. *Virginia* does not rule a conviction for trespass after notice by ordinance. However, if as we have shown above, p. 1247, a City Council may speak for the citizens on matters subject to the police power, we would have in the present prosecution the time-honored offense of trespass upon private grounds after notice. Thus, the *Marsh* and *Tucker* cases are not applicable here."

We think the quoted language makes it abundantly clear that the act of discrimination in refusing service is that of the individual and thus not subject to the interdiction of the Fourteenth Amendment. The same language also makes it clear that in prosecuting for trespass the State is making a valid exercise of police power. In other words, it makes no difference as to why the individual lunch counter operator did not want the appellants on the premises, because if they remained after a request to leave they became trespassers and the State prosecuted for trespass and not to enforce discrimination.

## SUFFICIENCY OF EVIDENCE IN LUPPER CASE

As previously mentioned, there was sufficient evidence to support the verdict of the jury in finding that the defendants Lupper and Robinson refused to leave the premises after having been requested to do so by the manager. It is not our province to pass upon the weight of the evidence. It requires no citation of cases as to the familiar rule that we may not go behind the verdict of a jury which is supported by substantial evidence.

## REFUSAL OF REQUESTED INSTRUCTIONS

The appellants complain of the action of the trial court in refusing to give two instructions requested by them. However, a comparison of the instructions which were refused with those which were given by the court makes it crystal clear that the subject matter of the rejected instructions was adequately covered by the instructions given. *Harrison* v. *State,* 222 Ark. 773, 262 S. W. 2d 907.

## EXCESSIVENESS AND HARSHNESS OF JUDGMENT

The appellants contend that the fines and punishment meted out to them were excessive and harsh even though they did not exceed the penalties provided by Act 14. This contention has been rejected many times by this court. See: *Johnson* v. *State,* 214 Ark. 902, 218 S. W. 2d 687.

## CONCLUSION

For the error indicated, the convictions under Act 226 of 1959 are reversed and the cases having been fully developed are dismissed.

The convictions of Lupper and Robinson under Act 14 of 1959 are affirmed.

Robinson, J., dissents in part; Holt, J., disqualified.

SAM ROBINSON, Associate Justice (dissenting). The majority is holding that there is no substantial evidence to sustain the convictions for violating Act 226 of 1959.

I do not agree. The Act provides that anyone who shall enter any place of business and create a disturbance in any manner whatsoever shall be guilty of a misdemeanor. Not only did the appellants create a disturbance in Pfeifers, Blass and Woolworth's, but they went to those places for the specific purpose of creating a disturbance. The evidence is overwhelming to that effect.

It is clear from the evidence that the appellants did not go to the lunch counters at the places mentioned because they were hungry and wanted food, and no one contends that they went there for that reason. The evidence shows conclusively that on the morning of March 10th a large group of people met at Philander Smith College and there agreed to go to Woolworth's for the purpose of attempting to force that place of business to serve them food, when they had no reason to believe that they would be served such food. About 50 of them walked from the college to Woolworth's; they all went in at the same time and sat down at the lunch counter. There are only 59 seats at the counter. It is a matter of common knowledge that in going from the college to Woolworth's they passed or went near numerous eating places that would have served them food.

Certainly, no operator of a privately owned restaurant is required by law to serve anyone he does not want to serve. The appellants are presumed to know the law, and when they went there they knew they could not lawfully require Woolworth's to serve them food. And they knew to a moral certainty that Woolworth's would not voluntarily serve them.

The evidence is overwhelming that appellants went to Woolworth's for the very purpose of creating a disturbance by violating the custom and practice of the community in seating themselves at a lunch counter reserved for others. Even when they were not served and the lunch counter was closed because of their conduct in occupying the seats, they continued to sit there. Of course, such an unusual occurrence created a disturbance, and someone called the police. When the police arrived and asked them

to remove themselves from the lunch counter, about 45 complied, but five continued to sit there, although the lunch counter had been closed. When all the facts are considered, there is no conclusion to be reached except that appellants went to Woolworth's to create a disturbance, to disrupt business and harass the proprietor. If this is not disturbing the peace, then it is hard to see how anyone could ever commit that offense.

The majority opinion is based on the premise that if a person is doing something lawful, he cannot be guilty of disturbing the peace. In my opinion, such reasoning is not sound. Certainly one has a right to pray or sing or do many other things that ordinarily would not be unlawful, but when such acts are done in a manner calculated to disturb the peace of the community, and does disturb the peace of many people to the extent that officers of the law have to be called to handle the situation, such acts are unlawful.

Disturbing the peace is synonymous with disorderly conduct and is so regarded in our statute. Our disturbing the peace statutes are placed under the heading of Disorderly Conduct in Ark. Stats., Vol. 4, p. 57. There have been many convictions for disturbing the peace or disorderly conduct that have been affirmed where the defendant had not so flagrantly violated the rights of others as was done by the appellants in the case at bar. In the case of *State* v. *Cooper*, 285 N. W. 903 (Minn. 1939), a discharged chauffeur had his former employer's home picketed with a banner reading "Unfair to Private Chauffeurs and Helpers Union, Local No. 912". In sustaining a conviction for disorderly conduct by the one carrying the banner, the Minnesota court said: " 'Conduct is disorderly, in the ordinary sense, when it is of such nature as to affect the peace and quiet of persons who may witness the same and who may be disturbed or provoked to resentment thereby.' Or, as stated further: 'The probable and natural consequence of the conduct is the important element.' As to modern statutes and ordinances relating to disorderly conduct, 'it may be said in general that words and acts which tend to disturb the peace . . . of the com-

munity, or of a class of persons, or of a family, are punishable.' 18 C. J. p. 1216, [§ 2]B, and cases under note 12. And in several jurisdictions it has been held that such conduct 'as in the opinion of the magistrate tends to a breach of the peace' is punishable; 'and even in the absence of such a statutory definition it is generally a question for the magistrate whether or not the particular act complained of is comprehended within the expression "disorderly conduct".' Id. and cases under notes 16 and 17; 8 R. C. L. p. 285, § 306, and cases under note 7. We are of opinion and so hold that it was for the court to determine whether upon this record defendant was guilty, and that its findings in that behalf should not be overturned. The judgment and sentence are therefore affirmed.''

In *Bennett* v. *City of Dalton,* 25 S. E. 2d 726 (Ga. 1943), the defendants were distributing a religious magazine known as ''The Watch Tower'' and caused a crowd to gather. A policeman told them to move on, which they refused to do, stating they were doing the Lord's work and would have to be locked up. They were therefore arrested. In affirming the convictions for disorderly conduct, and notwithstanding the constitutional guarantee of freedom of speech, freedom of press, freedom of worship and religious liberty was involved, the Georgia court said: ''The testimony of the policemen authorized the recorder, sitting as both judge and jury, to find that the refusal of the defendants to move on, after having been directed to do so by an officer of the law, constituted disorderly conduct.'' Certiorari was denied by the United States Supreme Court. *Bennett* v. *City of Dalton,* 64 S. Ct. 197, 320 U. S. 712, 88 L. Ed. 418.

In the New York case of *People* v. *Galpern,* 181 N. E. 572 (1932), a policeman told about five or six men congregated on a sidewalk to move on, which they refused to do. The court found that they were violating no law at the time, but they were guilty of disorderly conduct in refusing to move on when directed by an officer to do so. The court said: ''The courts cannot weigh opposing considerations as to the wisdom of the police officer's directions when a police officer is called upon to decide

whether the time has come in which some directions are called for." And that is exactly the situation that existed in the case at bar. The police were of the opinion that the situation was tense and such that the Negroes should move on, and only the ones who refused to do so were arrested. In addition to what has been said heretofore, clearly their refusal to move on when directed by an officer of the law created a disturbance within the meaning of the statute.

Under the decision handed down by the majority, a large number of people can go into any place of business, create a disturbance by their presence, disrupt business and annoy the proprietor to no end, and there is nothing he can do except request them to leave, which they can do and immediately return to the restaurant or other place of business and go through the same procedure until the owner breaks down and does business with them or goes out of business.

The trial court was completely justified in finding from the evidence in the cases that the real purpose of the appellants in going to the lunch counter at Woolworth's was to unlawfully harass the owners, thereby compelling such owners to serve food to the appellants or close the lunch counter. Here, the owners adopted the procedure of closing the eating places. The same thing occurred at Pfeifers and Blass.

In my opinion the evidence is ample to sustain the convictions for violating the provisions of Act 226 of 1959, and in addition, Ark. Stats. § 41-1403 provides that if two or more persons assemble together for the purpose of disturbing the peace they are guilty of a misdemeanor.

For the reasons given I therefore dissent.

Supplemental opinion on denial of request for rehearing in Case No. 4997 delivered June 3, 1963.

JIM JOHNSON, Associate Justice. Subsequent to the opinion delivered by this court in *Lupper* v. *State* on May 13, 1963, the United States Supreme Court on May 20,

1963, rendered opinions in four "sit-in" cases the pendency of which was specifically referred to in our opinion as cases in the nature of and similar to the cases at bar. The four cases are *Avent* v. *North Carolina*, # 11; *Peterson* v. *City of Greenville*, # 71; *Lombard* v. *Louisiana*, # 58; and *Gober* v. *Birmingham*, # 66.

Within the time prescribed by the rules of this court, appellants have petitioned for a rehearing urging reconsideration of our opinion in the light of these recent pronouncements of the United States Supreme Court.

A careful examination of copies of the official opinions in these cases furnished us by the Government Printing Office discloses that the court [in *Lombard* v. *Louisiana*, # 58] summarized its own holdings as follows:

"We have . . . held . . . that where an ordinance makes it unlawful for owners or managers of restaurants to seat white and Negroes together, a conviction under the State's criminal processes employed in a way which enforces the discrimination mandated by that ordinance cannot stand. Equally the State cannot achieve the same result by an official command which has at least as much coercive effect as an ordinance."

In compliance with petitioners' request for review, we have reexamined our opinion in the light of the cited cases and find that appellants did not claim nor was there any showing made relative to the existence of a state law or municipal ordinance in the City of Little Rock which made it unlawful for owners or managers of restaurants or lunch counters to seat whites and Negroes together. Further, appellants did not claim nor was there any showing made that any official command was issued which could remotely have the coercive effect of a law requiring segregation of the races in restaurants or lunch counters. In fact, from our assiduous review of the entire record before us, we have been unable to find any claim, evidence or showing indicating in the slight-

est respect that the decision of the manager in the case at bar to exclude these petitioners from the lunch room was anything except the exercise of freedom of choice. Having thus reviewed our opinion in the light requested, rehearing is denied.