**Lendell W. CHASE et al.**

v.

**Chief Eugene McCAIN et al.**

**Civ. A. No. 575.**

United States District Court
W. D. Virginia,
at Danville, Virginia.

July 18, 1963.

**408**

Ruth L. Harvey, Len W. Holt, Danville, Va., William Kunstler, New York City, Simon L. Cain, Washington, D. C., Andrew C. Muse, George Woody, Danville, Va., Nathan G. Conyers, Detroit, Mich., E. A. Dawley, Jr., Norfolk, Va., Harry I. Wood, J. L. Williams, Danville, Va., Dean Robb, Detroit, Mich., J. A. Jordon, Norfolk, Va., Chester Antieau, Washington, D. C., for plaintiffs.

James A. H. Ferguson, John W. Carter, Danville, Va., for defendants.

MICHIE, District Judge.

This suit is one of the numerous suits growing out of the recent "demonstrations" in Danville by colored citizens seeking what they doubtless honestly believe to be their rights under the law. Fortunately, I do not have to decide in this case whether their beliefs are justified. The demonstrations led to actual violence which the colored citizens blame wholly upon the police and the police blame wholly upon the demonstrators. Again, I am happy to say that I do not have to decide that issue in this case.

As a result of the demonstrations and the violence attending them, the City Council of the City of Danville adopted Ordinance No. 63–6.2 entitled "An Ordinance Limiting Picketing and Demonstrations; Providing Punishment for Violations Thereof."

The Bill of Complaint alleges that the ordinance infringes on the Constitutional rights of the plaintiffs and asks that this Court issue a temporary restraining order against further arrests and prosecutions under the ordinance and later a temporary injunction to the same effect and finally that the Court declare the ordinance unconstitutional.

In the view that I take of the case it is unnecessary to go into the substance of the ordinance in any detail. It regulates noise at meetings, the manner in which demonstrators may march, the number of pickets that may demonstrate in front of a building, the hours during which demonstrations are permitted and other similar matters.

Before I get to the question of the reasonableness and therefore the constitutionality of the provisions of the ordinance, I am met by the City's contention that a federal court, even if it has jurisdiction, should refrain from exercising it until the plaintiffs have exhausted their remedies in the state courts. As I believe this contention of the City to be sound, I do not reach the question of the constitutionality of the ordinance.

The cases of Henderson, et al. v. Trailway Bus Company, et al. and Robinson, et al. v. Hunter, et al., 194 F.Supp. 423, 424 (1961), affirmed by the United States Supreme Court on June 17, 1963 in a *per curiam* opinion (sub nom. Robinson v. Hunter, 374 U.S. 488, 83 S.Ct. 1875, 10 L.Ed.2d 1044) are determinative of this case. These cases, heard by Circuit Judge Boreman and District Judges Lewis and Bryan, with opinion by Judge Bryan, arose out of the so-called "sit-ins," defined by Judge Bryan as "the passive and peaceable refusal of a Negro, or a white person acting in sympathy with him, to leave a restaurant, where on account of his race or color, the Negro has been denied service of food or beverages at the same counter or other space at which white persons are served." As in the case at bar, it was argued that the Virginia statutes requiring such segregation deprive the colored people of privileges and immunities secured to them by the equal protection clause of the Federal Constitution's Fourteenth Amendment and by the Civil Rights Acts. 42 U.S.C.A. §§ 1981–1983.

The court held that the Virginia statutes requiring such segregation, as applied in that case, were not unconstitu-

tional, but went on to hold that, even if they were, persons charged with crime under them had no right to bring a suit for an injunction against their enforcement in a Federal court, saying:

"But if we have erred in not finding infirmity in these statutes or inequality in their enforcement, nevertheless the plaintiffs have not shown an entitlement to an injunction. In the first place, a plain and adequate remedy at law is available to them, and this readiness, of course, completely refutes their appeal to equity jurisdiction. Redress at law is provided in their opportunity to defend the criminal prosecutions, indeed to stand mute until a case is made against them beyond a reasonable doubt under these very statutes, with no burden whatsoever upon them as defendants there. Nothing here indicates that a full and fair presentation, hearing and consideration of their views upon the validity of the two statutes cannot be had before the State courts in these prosecutions. Spence v. Cole, 4 Cir., 1943, 137 F.2d 71, 72. There is also the ultimate right of review in the Federal Supreme Court, as illustrated by Murdock v. Commonwealth of Pennsylvania, 1943, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292. Irreparable injury to the plaintiffs through submission of their contentions in this manner to the State tribunals is not demonstrated. This circumstance obviously undermines all foundation for the injunction claimed.

"Strengthening this conclusion is the time-honored, judicious precept that a Federal court should never interpose its decree between a State and a criminally accused save in unusual circumstances—and none is here. Spence v. Cole, 4 Cir., 137 F.2d 71, 73, supra. So recently as February 27, 1961 the Supreme Court reaffirmed this rule. Aptly speaking to this point for the Court, in Wilson v. Schnettler, 365 U.S.

381, 81 S.Ct. 632, 635, 5 L.Ed.2d 620, Justice Whittaker summarized the doctrine in this language:

" '* * * If, at the criminal trial, the Illinois court adheres to its interlocutory order on the suppression issue to petitioner's prejudice, he has an appeal to the Supreme Court of that State, and a right if need be to petition for "review by this Court of any federal questions involved." Douglas v. City of Jeannette, 319 U.S. 157, 163 [63 S.Ct. 877, 881, 87 L.Ed. 1324]. It is therefore clear that petitioner has a plain and adequate remedy at law in the criminal case pending against him in the Illinois court.

" 'There is still another cardinal reason why it was proper for the District Court to dismiss the complaint. We live in the jurisdiction of two sovereignties. Each has its own system of courts to interpret and enforce its laws, although in common territory. These courts could not perform their respective functions without embarrassing conflicts unless rules were adopted to avoid them. Such rules have been adopted. One of them is that an accused "should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial." Ponzi v. Fessenden, 258 U.S. 254, 259 [42 S.Ct. 309, 310, 66 L.Ed. 607]. Another is that federal courts should not exercise their discretionary power "to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is both clear and imminent; * * *" Douglas v. City of Jeannette, supra, [319 U.S.] at 163 [63 S.Ct. at page 881].'

"The declaratory judgment prayed by the plaintiffs must also be denied. That procedure we deem inappropri-

ate in the circumstances because the issue of criminal responsibility should be left to the State court. Spence v. Cole, 4 Cir., 137 F.2d 71, 73, supra."

Wilson v. Schnettler, referred to in the above quotation, involved an effort by a prisoner, held in a state jail for trial, to have a federal court suppress certain evidence that was to be used against him. The state court had declined to suppress the evidence. The disposition of the matter by the Supreme Court is sufficiently indicated in the quotation above from Henderson v. Trailway Bus Company.

Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), also referred to in the quotation from Wilson v. Schnettler, supra, was a case which arose out of an ordinance of the City of Jeannette, evidently aimed at members of Jehovah's Witnesses, prohibiting the solicitation of orders for merchandise without first procuring a license from the city authorities and paying a license tax. Members of Jehovah's Witnesses instituted the suit to restrain the city and its mayor from enforcing the ordinance after criminal prosecution had been started against them under the ordinance.

The court in that case said:

"Where the threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury 'both great and immediate.'"

But petitioners claim that this case is different in that they will probably receive short sentences and will not be allowed bail by the Corporation Court of the City of Danville for a period during which they can perfect an appeal and pending the decision on appeal. But § 19.1–281 of the Code of Virginia expressly provides, in part: "A writ of error from the Supreme Court of Appeals shall lie to any such judgment refusing bail or requiring excessive bail." And we may be certain that in case of a short sentence the Supreme Court of Appeals would act quickly on such a writ.

Petitioners also claim that the Jeannette case is no longer the law. But in Wilson v. Schnettler, supra, decided in 1961, the Supreme Court quoted with approval from the Jeannette case on this point. In one of the three cases cited by the petitioners to indicate that Jeannette is no longer the law, Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L. Ed.2d 222, the point in question was not discussed in the Supreme Court opinion, and there apparently was no opinion in the lower court. In another, Gallagher v. Crown Kosher Supermarket, 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536, the point in question was discussed by the court below but not by the Supreme Court.

In the third case relied upon by the petitioners, Gayle v. Browder, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114 (opinion below at D.C., 142 F.Supp. 707), the point was discussed below as follows:

"The defendants, relying on Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002, insist that even if the Federal court has jurisdiction, it should, in its discretion as a court of equity, and for reasons of comity, decline to exercise such jurisdiction until the State courts have ruled on the construction and validity of the statutes and ordinances. The short answer is that doctrine has no application where the plaintiffs complain that they are being deprived of constitutional civil rights, for the protection of which the Federal courts have a responsibility as heavy as that which rests on the State courts."

The Supreme Court affirmed in a *per curiam* decision without discussion of this point. It can hardly be believed that in these three decisions, none of which discussed the point, the Supreme Court intended to reverse in such a summary manner the Jeannette case, especially since it has followed the Jeannette decision in the later cases of Wilson v. Schnettler, supra, and Henderson v. Trailway Bus Company, supra.

Under that view, it would appear that the Complaint must be dismissed.

An order will be entered accordingly.